IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| CONNIE S.,[1] | ) | |
| Plaintiff, | ) | Civil Action No. 5:20-cv-00064 |
| v. | ) | |
| | ) | REPORT & RECOMMENDATION |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | By:   Joel C. Hoppe |
| Defendant.[2] | ) | United States Magistrate Judge |

Plaintiff Connie S. asks this Court to review the Commissioner of Social Security's final

decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social

Security Act, 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C.

§ 636(b)(1)(B). Having considered the administrative record, the parties' arguments, and the

applicable law, I cannot find that substantial evidence supports the Commissioner's denial of

benefits. Accordingly, I respectfully recommend that the presiding District Judge reverse the

final decision and remand the matter under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final

decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v.*

*Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for

that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court

reviewing the merits of the Commissioner's final decision asks only whether the Administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the
United States has recommended that, due to significant privacy concerns in social security cases, federal
courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named defendant in this action. 42 U.S.C. §
405(g); Fed. R. Civ. P. 25(d).

Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe medical impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other

work existing in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4).[3] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Background

In March 2016, Connie filed for DIB alleging that she was disabled by venous reflux disease, lymphedema, nerve pain, insomnia, and varicose veins. *See* Administrative Record ("R.") 270–71, 327. Connie alleged that she became disabled on May 12, 2014, *see* R. 105, 323, but she continued to work once a week as a caregiver to a person with disabilities, R. 327, 329. *See also* R. 105 ("[R]eporting clearly not SGA."); R. 323 ("SGA: No[;] Not SGA: Yes"). She was forty-seven years old, or a "younger person" under the regulations, on her alleged onset date. R. 104; 20 C.F.R. § 404.1563(c). Disability Determination Services ("DDS"), the state agency, denied Connie's claim initially in May 2016, R. 104–17, and upon reconsideration that August, R. 118–31. In January 2018, Connie appeared without counsel and testified at a hearing before ALJ Robert Baker Jr. R. 71–103. ALJ Baker noted that Connie's earnings record showed both wages from RDS Corp. and "a lot of self-employment" in 2003–2006, and he asked her to explain how she earned that income. R. 87. Her earnings record for 2003, for example, showed $12,000 in wages from RDS Corp., and $43,000 in self-employment income. R. 88 (citing R. 292). Connie explained that she "was helping [her] husband out with his business," R. 87, by sometimes "filing papers and entering stuff in the computer for QuickBooks," R. 92 ("And were you doing that full-time? A. No."). She did those tasks "at home, where [she] could move

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

around" and rest to relieve the pain and constant swelling in her legs. R. 92; *see* R. 84, 90–96.

She was not sure if she would "have made as much as $43,000" for that work. R. 87. A

vocational expert ("VE") testified about Connie's ability to do her past job for her husband's

company, which the VE characterized as an "accounting assistant," that Connie said she

performed from 2007–2008 if she could do "sedentary" work, sit for "six hours in an eight-hour

day, but must alternate to standing for two minutes after every 30 minutes of sitting," and "stand

and/or walk for two hours in an eight-hour day, but must alternate to sitting for two minutes after

every 15 minutes of standing and/or walking." *See* R. 96–102 (citing R. 311, 315).

ALJ Baker issued an unfavorable decision on March 21, 2018. R. 135–41. He found that

Connie had not performed substantial gainful activity ("SGA") since May 12, 2014. R. 137.

Connie's varicose veins of the lower extremities, chronic venous insufficiency, degenerative disc

disease, lipedema, and obesity were "severe" medically determinable impairments, R. 137–38,

but they did not meet or medically equal any relevant Listing, R. 138 (citing 20 C.F.R. pt. 404,

subpt. P, app. 1 §§ 1.04, 4.11). ALJ Baker then evaluated Connie's residual functional capacity

("RFC") and found that she could do the full range of "sedentary" work "except . . . she must

alternate to standing for 2 minutes after every 30 minutes of sitting" and "must alternate to sitting

for 2 minutes after every 15 minutes of standing and/or walking."[4] R. 138; *see* R. 140. She did

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a), and generally requires sitting for about six hours, and standing/walking for about two hours, during an eight-hour workday, *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 768 (W.D. Va. 2002). *See* SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations," SSR 96-9p, 1996 WL 374185, at *3, but are not presumed disabled if their younger age, relatively recent education, and/or past work experience would allow them to adapt to other work, *see* 20 C.F.R. pt. 404, subpt. P, app. 2 §§ 201.00, 201.17–201.29. As an individual ages, however, the more likely he or she is to be found disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 §§ 201.00(d)–(g), 201.01–14. For example, "[i]ndividuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant work and have no transferable skills, a finding of disabled ordinarily obtains. . . . For this age group even a high

4

not need to lie down, elevate her legs, or take extra breaks during an eight-hour workday. R.

139–40; *see* R. 84, 90, 92–93, 95–96, 101. Finally, based on his RFC finding and the VE's

testimony, ALJ Baker found that Connie was not disabled after May 12, 2014, because she could

do her "past relevant work as an Accounting Assistant" as that skilled sedentary occupation was

"actually and generally performed." *See* R. 140–41 (citing R. 96–102).

In March 2019, the Appeals Council vacated ALJ Baker's decision "under the error of

law provision," R. 149 (citing 20 C.F.R. § 404.970), because none of the "sedentary and skilled"

work that Connie did in 2007–2008, including the "accounting assistant" job that ALJ Baker

relied on in his decision, "met the regulatory criteria" for past relevant work ("PRW") done at

SGA-levels for at least six months, R. 150 (citing R. 140–41, 311, 315, 329). "Further," while

Connie "testified that she worked for her husband's company, RDS Corp., from 2003–2005" and

it "appear[ed] from the earnings record" that she earned SGA-level income "from this job in

2004 and 2005," it was "unclear whether she performed the job of accounting assistant while she

worked at RDS Corp. or what her duties were while working for RDS Corp." R. 150. Thus, the

Appeals Council remanded Connie's case with instructions for ALJ Baker to further consider

whether she "has past relevant work, specifically her past work while employed by RDS Corp.,

from 2003–2005; and if so, can [she] perform it" after May 12, 2014. *See* R. 150. It also

instructed him to "obtain supplemental evidence from a [VE] to clarify the effect of the assessed

limitations on [Connie's] occupational base, and to determine whether [she] has acquired any

skills that are transferable to other occupations" existing in significant numbers in the national

economy. *Id.* (internal citation omitted).

---

school education or more (ordinarily completed in the remote past) would have little impact for effecting
a vocational adjustment unless relevant work experience reflects use of such education." *Id.* § 201.00(g);
*see id.* § 201.09–201.16.

On July 26, 2019, Connie appeared with counsel and testified at a second hearing before ALJ Baker.[5] *See* R. 30–69. She testified that her earnings record showed income from two separate entities: RDS Corp., which was her husband's company, and "Real Business Solutions," which was a "50-50 partnership" between her and her husband, Scott, and appeared "as self-employment" on her earnings records. *See* R. 45–47, 292–93. The businesses' former accountant submitted a letter explaining that Scott organized the companies this way in part to "allow his wife to have taxes paid into social security." R. 414; *accord* R. 45 ("Q. Do you recall why the partnership was set up? A. To transfer the money back into an account for my savings and for my retirement.").

Connie testified that her work for Real Business Solutions involved "get[ting] stuff in the mail," R. 48, and sometimes dropping off documents at the accountant's office "15 minutes away from her house, R. 50. *See* R. 58 ("Q: How many days a week would you have to drive to the accountant? A: Maybe one. Q: Okay. So that's maybe a half an hour in the car total. A: Yes, sir."). RDS Corp. was "mainly" based in this accountant's office, too, whereas Real Business Solutions "was in the[ir] home." R. 50–51. Sometimes Connie filed documents for her husband by putting them in the filing cabinet in their home office. R. 50. Connie also answered the partnership's "business phone at [their] home when it would ring, . . . . [b]ut it hardly ever rang," R. 49. When someone did call, she would "deal with the call if [she] could," R. 49, or take a message and relay it to her husband, R. 49, 51. *See also* R. 55–56. The couple's three school-

---

[5] Connie was now over 50 years old, which arguably would entitle her to DIB on and after her fiftieth birthday if ALJ Baker found either that she did not have any PRW, or that her "sedentary RFC" precluded her from doing her PRW. R. 36–38 (citing 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.14 (directing a finding of "disabled" for an individual aged 50–54 years old who is limited to "sedentary" work, is a "high school graduate or more—does not provide direct entry into skilled work" and has "skilled or semiskilled" work experience, but whose "skills [are] not transferrable" to other occupations)). *But see* R. 150 (instructing ALJ Baker to elicit VE testimony in order "to determine whether [Connie] has acquired any skills that are transferable" to other occupations offering a significant number of jobs in the national economy).

aged children also helped at the RDS Corp. office, R. 51–53; *see* R. 414, but Connie did not

supervise them because she "was at the[ir] home," R. 52. Connie and her husband shared profits

from Real Business Solutions between 2002–2011. R. 54; *see* R. 55 She "also got a paycheck

from RDS [Corp.]" in 2003, 2004, and 2005, R. 55; *see* R. 292–93, but her only job duties were

"taking papers to the accountant" once a week, R. 54, and answering the business phone when it

rang, R. 55 *See* R. 55–56. She spent "less than five" hours a week on those tasks. R. 57. When

the VE suggested that they should "not look[] at this a[s] SGA," the ALJ responded, "Well, she

earned . . . lots and lots of money from it, so it's SGA." R. 57. Whether they should "look[] at it

as competitive employment" was a question that ALJ Baker would resolve later. *See id.* ("VE:

Right. So we're looking at it as competitive employment. ALJ: Well, the argument is that it's

not. But as far as what she did, I'd like you to classify those job functions . . . you know, I'm

assuming it's primarily a sedentary job.").

The VE testified that Connie was "a routine office clerk" for RDS Corp. and Real

Business Solutions, and that the *DOT* describes this job as "light and semiskilled." R. 61.

Connie's testimony, however, indicated that she performed "only" unskilled tasks—i.e., answer

the phone, sort or file the mail, and drop off documents at another business—and did this job "at

a sedentary level." *See* R. 61–62, 65–66. The VE testified that a person with Connie's vocational

profile could do the "routine office clerk" job as Connie performed it if that person were limited

to sedentary work with the option to "alternate to standing for two minutes after every 30

minutes of sitting" and "alternate [to] sitting for two minutes after every 15 minutes of standing

or walking." *See* R. 62–63. The VE also identified unskilled sedentary occupations this person

could perform (e.g., finisher, assembler, final assembler) assuming she could "still . . . remain on

task." R. 63–64. But if the person either "missed more than one day per month" or was "off task

7

15 per cent or better, it would be inconsistent with competitive employment." R. 64. ALJ Baker

did not ask the VE whether Connie had "acquired any skills" from her past work that were

"transferable to other occupations" existing in significant numbers in the national economy, R.

150. *See* R. 61–64. In response to a question from Connie's attorney, however, the VE indicated

that Connie had not acquired any "skills associated with the clerical aspect of the job" she did for

RDS Corp. and Real Business Solutions. R. 65. Rather, the VE classified the Routine Office

Clerk job as "semiskilled" primarily because Connie's responsibilities included driving to the

accountant's office. R. 65–67; *see also* R. 62 (VE: "I was going to reduce it to [SVP] 2, because

she did not do any . . . typing or computer work. But she did drive, so I'll leave it at SVP 3.").

"Filing" would also be a semiskilled task assuming Connie "file[d] records in alphabetical or

numerical order" rather than just "put[ting] them in a drawer." R. 67. ALJ Baker did not ask

Connie to elaborate on how she "put something in the filing cabinet for [Scott] after he went

over" a business document. R. 50 ("Q. Did you have any correspondence to type, or any filing or

anything that you would do? A. When [Scott] would get papers, he would look at them. . . . And

then if he needed me to put something in the filing cabinet for him after he went over stuff, I

would do that.").

ALJ Baker issued a second unfavorable decision on November 8, 2019. *See* R. 15–22. He

again found that Connie had not performed SGA since May 12, 2014, and that her varicose veins

of the lower extremities, chronic venous insufficiency, degenerative disc disease, lipedema, and

obesity were severe impairments throughout the relevant time. R. 17–18. He also made the same

RFC finding as in his prior decision: Connie could do the full range of "sedentary work . . . , but

must alternate to standing for 2 minutes after every 30 minutes of sitting" and "must alternate to

sitting for 2 minutes after every 15 minutes of standing and/or walking." R. 18. She did not need

to lie down or take extra breaks during an eight-hour workday. R. 19–21 (finding that Connie's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with" or "supported by objective findings" in the medical record and Connie's reported ability to cook, do "light household chores," "crochet[] on occasion and care[] for her grandchildren when they visit"); *see* R. 37, 43, 63–64, 84, 90, 92–93, 95–96, 101. At step four, ALJ Baker found that Connie had "past relevant work as a Routine Office Clerk . . . at RDS Corp., her husband's company," R. 21 (citing R. 61–62), and that she did this work "at substantial gainful activity levels from[] 2003 to 2005 at RDS" and from "2004 to 2006 [as] Self-Employment," *id.* (citing R. 292–93). Finally, based on his RFC finding and the VE's testimony, ALJ Baker concluded that Connie was not disabled after May 12, 2014, because she could still do her "past relevant work as an office clerk" for RDS Corp. as that job was "actually performed." *Id.* (citing R. 62–63). He did not make any findings about Connie's acquired work skills or her ability to transition to other sedentary jobs existing in the national economy. *See id.* The Appeals Council declined to review that decision in August 2020, R. 1–4, and this appeal followed.

## III. Discussion

Connie makes two arguments on appeal. *See* Pl.'s Br. 3–16, ECF No. 14. First, she argues that ALJ Baker misapplied the law in finding that the tasks Connie did for her husband's companies in 2003–2006 qualified as "past relevant work" because those minimal and infrequent activities were not "*both* substantial *and* gainful." *Id.* at 10 (citing 20 C.F.R. § 404.1572). More specifically, although ALJ Baker found that Connie worked at "substantial gainful activity levels" for her husband's companies during that three-year period, he did not explain how he

considered compelling evidence showing Connie's actual job duties were so "minimal" and inconsequential to the business' operations that they did not meet the regulatory criteria for "substantial" work activity. *See id.* at 8–11 (citing R. 51, 55–58, 414; 20 C.F.R. § 404.1572(b)). Second, Connie argues that substantial evidence does not support ALJ Baker's RFC finding because he did not explain why he rejected Connie's allegations that she must rest or lie down throughout the day to relieve severe, painful swelling in her lower extremities. *See id.* at 13–16. Both arguments are persuasive.

*

A claimant's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his or her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). The ALJ's RFC finding should reflect specific credibly established "restrictions caused by medical impairments and their related symptoms" that impact the claimant's "capacity to do work-related physical and mental activities" on this basis, SSR 96-8p, 1996 WL 374184, at *1, *2. The ALJ's written decision must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, *id.* at *7, and logically explaining how he or she weighed any inconsistent or contradictory evidence in arriving at those conclusions, *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) ALJs use the RFC finding at step four to determine whether the claimant can still meet the "physical and mental demands" of his or her PRW, 20 C.F.R. § 404.1520a(f), and if not, at step five to determine whether he or she can transition to other, less demanding work existing in the national economy, *see id.* § 404.1520a(g). *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). The ALJ "will find" the claimant "disabled" if the claimant either does not

have any PRW *or* "cannot do" his or her PRW because of a severe medical impairment(s), 20

C.F.R. § 404.1520a(f), *and* the claimant cannot "make an adjustment to other work," *id.* §

404.1520a(g).

"Past relevant work is work that [the claimant has] done within the past 15 years, that

was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."

20 C.F.R. § 404.1560(b)(1). "Substantial gainful activity is work activity that is *both* substantial

*and* gainful: Substantial work activity is work activity that involves doing significant physical or

mental activities," even if those activities were "done on a part-time basis." *Id.* § 404.1572(a)

(emphasis added). "Gainful work activity is work activity that [the claimant did] for pay or profit

. . . . , whether or not a profit [was] realized." *Id.* § 404.1572(b). To determine whether the

claimant's past work was "substantial and gainful," *id.* § 404.1573(e), the ALJ should consider

evidence about the nature of the work, how well the claimant performed, whether the work was

done under special conditions or circumstances, and the time spent in work, *id.* § 404.1573(a)–

(c), (e). For example, a claimant's satisfactory performance "may show" that he or she was

working at the SGA level, whereas evidence that the claimant was "unable, because of [his or

her] impairments, to do ordinary or simple tasks satisfactorily without more supervision or

assistance than is usually given other people doing similar work, . . . may show that [he or she

was] not working" at the SGA level. *Id.* § 404.1573(b). Further, if the claimant did "work that

involves minimal duties that ma[de] little or no demands on [him or her] *and* that [were] of little

to no use to [the] employer, or to the operation of a business if [he or she was] self employed,

*this does not show* that [the claimant was] working at the substantial gainful activity level." *Id.*

(emphasis added).[6]

---

[6] Similarly, if the claimant was "allowed to work irregular hours" or was "given the opportunity to work
despite [his or her] impairment because of family relationship," *id.* § 404.1573(c)(1), (6), then the ALJ

Finally, SGA is based on the "reasonable value of the work" that the claimant performed for the employer, *id.* § 404.1574(a)(2), or, if the claimant was self-employed, "the value of [his or her] services to the business" under one of three tests, *id.* § 404.1575(a)(2). *See, e.g., id.* § 404.1572(a)(2) ("When we decide whether your [employee] earnings show that you have done substantial gainful activity, we do not consider any income that is not directly related to your productivity. When your earnings exceed the reasonable value of the work you perform, we consider only that part of your pay which you actually earn. If your earnings are being subsidized, we do not consider the amount of the subsidy when we determine if your earnings show that you have done substantial gainful activity."); *id* § 404.1575(a)(2) ("We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors such as capital investments and profit-sharing agreements."). Thus, ALJs cannot rely exclusively on the claimant's reported wages, *see id.* § 404.1572(a)–(b), or self-employment income, *see id.* § 404.1575(a)–(c), to conclude past work was SGA when evidence shows that reported earnings were "subsidized," *id.* § 404.1574(a)(2), (b)(2) (employee wages), or otherwise exceed the value of work done for the business, *see id.* § 404.1575(a)–(c). *See, e.g., Musbeck v. Heckler*, 614 F.

"*may* find that it does show that [the claimant has] the ability to do substantial gainful activity." *Id.* § 404.1573(c) (emphasis added). Those factors could also support a finding that the claimant does *not* have the ability to do substantial gainful activity. *Cf. Burnside v. Berryhill*, No. 2:17cv1329, 2017 WL 5710460, at *5–6 (S.D. W. Va. Oct. 30, 2017) (substantial evidence did not support "ALJ's analysis and conclusion that [c]laimant's substantial gainful activity during the relevant period was not a subsidy" where ALJ did not resolve what "appear[ed] to be a 'marked discrepancy'" between the wages claimant was paid for working "approximately 10 hours pers week" as a part-time pastor and the reasonable economic value of his "reduced" services to the congregation) (quoting SSR 83-33, 1983 WL 31255, at *4)); *Scott v. Comm'r of Soc. Sec.*, 899 F. Supp. 275, 279 (S.D. W. Va. 1995) (substantial evidence did not support ALJ's finding that claimant's work for his family partnership, where the "only job requirement apparently was to answer the telephone" for "12 hours per week" in exchange for $2,000 monthly wages, was SGA where ALJ "failed to evaluate the extent to which" his reported wages "were not related to actual productivity but to a subsidy by the company") (citing 20 C.F.R. § 404.1574(a)(2)).

Supp. 1086, 1089–90 (E.D. Pa. 1985) (explaining that "substantial gainful activity is not

conclusively shown when a magic number on the earnings scale appears," because the governing

regulations expressly require ALJs to consider whether, despite the claimant's reported earnings,

the work involved such "minimal duties that ma[de] little or no demands" on the claimant and

were "of little or no use" to the employer that it "does not show" the claimant worked at the

SGA-level (citing 20 C.F.R. § 416.974) (cleaned up)).

An employee's wages are "subsidized if the true value of [his or her] work, when

compared to the same or similar work done by unimpaired persons, is less than the actual amount

of earnings paid to [the employee] for [the] work." 20 C.F.R. § 404.1574(a)(2). Determining

whether past work counts as SGA "will not be based only on the amount of wages paid" in those

cases. *Id.* Rather, ALJs

> will first determine whether the [claimant] received a subsidy; that is, [they] will
> determine whether the [claimant] was being paid more than the reasonable value of
> the actual services performed. [They] will then subtract the value of the subsidy
> from the [claimant's] gross earnings to determine the earnings [the ALJ] will use
> to determine if [the claimant] has done substantial gainful activity.

*Id.* "The resulting amount" of earnings for any given year will "ordinarily show" that the

claimant engaged in SGA if "they average more than the larger of: (A) The amount for the

previous year, or (B) An amount adjusted for national wage growth," *id.* § 404.1574(b)(2)(A)–

(B), using "calculations from the national average wage index," *Renee T. v. Kijakazi*, No.

1:20cv3712, 2022 WL 280221, at *3 (D. Md. Jan. 31, 2022).

Even more specific rules apply when the claimant reports self-employment income. *See*

20 C.F.R. § 404.1575(a)(2) ("We determine whether you have engaged in substantial gainful

activity by applying three tests. If you have not engaged in substantial gainful activity under test

one, then we will consider tests two and three."). Under "Test One," a self-employed claimant

engaged in SGA if he or she "render[ed] services that [were] significant to the operation of the

business and receive[d] a substantial income from the business." *Id.* § 404.1575(a)(2)(i). Where, as here, the claimant was "not a farm landlord" and the relevant business "involve[d] the services of more than one person," ALJs will find that the claimant "render[ed] significant services" if he or she either "contribute[d] more than half the total time required for the management of the business, or . . . render[ed] management services for more than 45 hours a month regardless of the total management required by the business." *Id.* § 404.1575(b)(1). "[C]ountable income is considered substantial" if it "averages more than the amounts described in § 404.1574(b)(2)," applicable to unsubsidized wages. *See id.* § 404.1575(c)(2)(i). If the claimant has "not engaged in [SGA] under test one, then [the ALJ] will consider tests two and three." *Id.* § 404.1575(a)(2). Under Test Two, a self-employed claimant engaged in SGA if his or her "work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in [his or her] community who are in the same or similar businesses as their means of livelihood." *id.* § 404.1575(a)(2)(ii). Under Test Three, a self-employed claimant's work activity is SGA if, "although not comparable to that of unimpaired individuals, [it] is clearly worth the amount in § 404.1974(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work" the claimant was doing." *Id.* § 404.1575(a)(2)(iii).

\*\*

ALJ Baker found that Connie had "past relevant work as a Routine Office Clerk . . . at RDS Corp., her husband's company," R. 21 (citing R. 61–62), and that she did this work "at substantial gainful activity levels from[] 2003 to 2005 at RDS" and from "2004 to 2006 [as] Self-Employment," *id.* (citing R. 292–93). His finding that this work was SGA, however, appears to rely exclusively on Connie's reported earnings for those years. *See id.*; R. 292–93 (reporting

$12,480 in wages from RDS Corp., and $43,863 in self-employment income for 2003; $13,520 in wages from RDS Corp., and $37,068 in self-employment income for 2004; $12,480 in wages from RDS Corp., and $30,916 in self-employment income for 2005; and $6,240 in wages from RDS Corp., and $26,821 in self-employment income for 2006). Indeed, he stated at the second hearing that Connie "earned . . . lots and lots of money from it, so it's SGA." R. 57. He did not mention—let alone explicitly consider—Connie's undisputed testimony that she devoted fewer than five hours a week to these businesses, R. 57, and that her only responsibilities were to pick up and sort the mail, drop off documents at their local accountant's office once a week, put papers in the filing cabinet at their home office, and answer the partnership's "business phone at [their] home when it would ring, . . . . [b]ut it hardly ever rang," R. 49. *Accord* R. 48–54, 58, 61–62, 65–66, 92. Connie also testified that she did most of those tasks "at home, where [she] could move around" and rest as needed to relieve the pain and constant swelling in her legs. R. 92; *see* R. 84, 90–96. ALJ Baker also did not mention Connie's testimony, in response to the ALJ's question about her reported earnings, that she did not remember if she "would . . . have made as much as $43,000" for doing those tasks in 2003. R. 87.

This evidence supports Connie's position that the infrequent clerical tasks she did for RDS Corp. and/or Real Business Solutions involved such "minimal duties that mad[e] little or no demands" on her physical abilities and provided "little to no use" to the operation of their family's businesses that, as a matter of law, they "do[] not show" she worked at SGA levels in 2003–2006. *See* Pl.'s Br. 10–11 (citing 20 C.F.R. § 404.1573(b)). Yet, ALJ Baker "never so much as hinted that his discretion was checked by the factors enumerated in Section [404.1573], which it is," *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385–86 (4th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)), before summarily concluding that Connie did "substantial"

work activity in each of those years, R. 20. *Cf. Dowling*, 986 F.3d at 385–86 (reversing and remanding where ALJ made analogous error in rejecting treating physician's medical opinion). Additionally, as the Commissioner concedes in her brief, ALJ Baker could not rely on Connie's earnings from 2003, because she performed that work activity more than fifteen years before the ALJ issued his decision in 2019. *See* Def.'s Br. 1, 4, 9–10, ECF No. 18. Thus, ALJ Baker should have limited his PRW inquiry to Connie's income earned for SGA-level work performed in 2004–2006. *See id.* at 1, 4 (doing the same); R. ("ALJ: And I think 2004 is still relevant based on now. ATTY: Yes."); 20 C.F.R. §§ 404.1560(b)(1), 404.1572(a)(2), 404.1574(a)(2), 404.1575(a)–(c).

Testimony given at both administrative hearings also suggests that the $32,240 in total wages from RDS Corp. that Connie reported as income during this time, R. 292–93, "exceed[ed] the reasonable value of the work" or services she did for her husband's company, 20 C.F.R. § 404.1574(a)(2). *See* R. 57, 61–62, 64–66, 87. Thus, ALJ Baker needed to "first determine whether [Connie] received a subsidy" because she "was being paid more than the reasonable value of the actual services performed" and, if so, to "subtract the value of the subsidy from [Connie's] gross earnings to determine the earnings" he should have used to determine, 20 C.F.R. § 404.1574(a)(1), whether Connie did SGA-level work for RDS Corp. in 2004–2006. This critical finding could "not be based only on the amount of the wages paid" by RDS Corp. during that time. *Id.*; *see also id.* § 404.1572(a)(2). Because ALJ Baker did not consider whether Connie's wages were subsidized, as the regulations required him to do, I cannot conclude substantial evidence supports his findings that Connie had "past relevant work," performed at SGA-levels in 2003–2005, as a routine office clerk for RDS Corp. *See, e.g.*, *Scott*, 899 F. Supp. at 279 (substantial evidence did not support ALJ's finding that claimant's work for his family

partnership, where the "only job requirement apparently was to answer the telephone" for "12 hours per week" in exchange for $2,000 monthly wages, was SGA where ALJ "failed to evaluate the extent to which" his reported wages "were not related to actual productivity but to a subsidy by the company") (citing 20 C.F.R. § 404.1574(a)(2)); *cf. Burnside*, 2017 WL 5710460, at *5–6 (substantial evidence did not support "ALJ's analysis and conclusion that [c]laimant's substantial gainful activity during the relevant period was not a subsidy" where ALJ did not resolve what "appear[ed] to be a 'marked discrepancy'" between the wages claimant was paid for working "approximately 10 hours per week" as a part-time pastor and the reasonable economic value of his "reduced" services to the congregation) (quoting SSR 83-33, 1983 WL 31255, at *4)); *Roop v. Astrue*, No. 7:09cv343, 2010 WL 4723765, at *4 (W.D. Va. Nov. 15, 2010) (reversing and remanding where "ALJ recognized that Roop received 'special considerations that are not generally accorded other employees,'" but failed to develop an adequate evidentiary record or explicitly consider "whether Roop was paid the value of his work or whether his earnings constituted a subsidy").

ALJ Baker also did not consider whether the $94,805 in total self-employment earnings that Connie reported for 2004–2006 represented SGA-level income under any of the tests in § 404.1575(a)(2)(i)–(iii). No evidence shows that Connie "contribute[d] more than half the total time required for the management of the business, or . . . render[ed] management services for more than 45 hours a month regardless of the total management required by the business," *id.* § 404.1575(b)(1), as required to show that she "render[ed] significant services" to her family's partnership under Test One, *id.*; *see id.* § 404.1575(a)(2)(i). On the contrary, the VE testified that Connie did "only" unskilled tasks without any management or supervisory responsibilities, *see* R. 62, and Connie testified that she spent "less than five hours a week" on those clerical tasks, R.

17

57. *Cf. Hines*, 453 F.3d at 566 ("The deference accorded an ALJ's findings of fact does not mean

that we credit even those findings contradicted by undisputed evidence."). Thus, ALJ Baker

needed to determine whether Connie engaged in SGA under Test Two or Test Three. *See* 20

C.F.R. § 404.1575(a)(2). Because the ALJ did not follow this mandatory regulation, I cannot

conclude that substantial evidence supports his findings that Connie had "past relevant work,"

performed at SGA-levels in 2004–2006, as a routine office clerk for her family's partnership. *Cf.*

*Dowling*, 986 F.3d at 385–86 (ALJ's failure to follow mandatory regulation for evaluating

medical opinions required reversal and remand); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846

F.3d 656, 663 (4th Cir. 2017) (ALJ's failure to follow mandatory regulation for evaluating

mental impairments required reversal and remand).

    Thus, substantial evidence does not support the Commissioner's denial of benefits at step

four. ALJ Baker's legal errors may have been harmless had he made alternative, properly

supported findings about Connie's ability to transition to other work in the national economy

considering her chronological age throughout the relevant time, education, transferable work

experience, and sedentary RFC. *See Timmons v. Colvin*, No. ADC-16-271, 2016 WL 7408837, at

*6–7 (D. Md. Dec. 21, 2016). Connie suggests that those findings are not necessary because,

once she turned 50 years old in January 2017, she was entitled to benefits under Grid Rules

201.12 or 201.14, which direct a finding of "disabled" for someone aged 50–54 years old who is

limited to "sedentary" work, is at least a "high school graduate," but whose education "does not

provide direct entry into skilled work," and has "unskilled" work experience, 20 C.F.R. pt. 404,

subpt. P, app. 2 § 201.12, or "skilled or semiskilled" work experience, but whose "skills [are] not

transferrable" to other occupations, *id.* § 201.14. *See* Pl.'s Br. 12–13 (citing 20 C.F.R. pt. 404,

subpt. P, app. 2 §§ 201.14). But ALJ Baker did not make any express findings about Connie's

age, education, or work experience, *see* R. 21–22, and the Court cannot speculate as to how he would have considered the evidence relevant to those critical questions, *see Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). *Cf. Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."). Moreover, although Connie states in her brief that she "continues to waive any claim to disability benefits prior to her 50th birthday," Pl.'s Br. 13 n.9 (citing R. 36), ALJ Baker did not mention waiver or an amended onset date in his decision, and he stated repeatedly that Connie alleged disability as of May 12, 2014, *see* R. 15, 17, 22. Given this ambiguity, as well as the fact that ALJ Baker did not address the VE's testimony relevant to the step-five determination, *see* R. 21–22, 63–64, it would be inappropriate for the Court to remand Connie's case with instructions for the Commissioner to pay DIB starting on her 50th birthday. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Instead, the proper course is to reverse the 2019 denial of benefits and remand the matter for the ALJ to further develop the record, if appropriate, and to make factual findings necessary to determine whether Connie can transition to other work existing in the national economy. *See Amy J. v. Kijakazi*, No. 3:20cv67, 2021 WL 4902388, at *3–4 (W.D. Va. Oct. 21, 2021).

***

I take no position on whether Connie is entitled to disability benefits after May 2014. On remand, the ALJ must consider and apply the correct legal rules to all the relevant evidence in the record; explain how any material inconsistencies or ambiguities were resolved at each critical stage of the determination; and, assuming Connie cannot prove that she was disabled based on

the medical evidence alone, provide a logical link between the evidence the ALJ found credible and the RFC determination. The ALJ must also remember that he or she "may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them" when evaluating the RFC. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *see* Pl.'s Br. 13–16. ALJ Baker found that Connie's medical impairments could reasonably be expected to cause severe pain and swelling in her lower extremities, *see* R. 19–20, but that Connie's statements describing the intensity, persistence, and functionally limiting effects of those symptoms were "not entirely consistent with" her reported ability to cook, do "light household chores," "crochet[] on occasion and care[] for her grandchildren when they visit," R. 21. He did not mention Connie's testimony that her school-aged grandchildren were "pretty much self-sufficient" when they visited, R. 89; that she did some "light" cooking, but not as much as she used to before she had so much pain and swelling, R. 92–93; and that she had to do chores "in spurts" throughout the day so she could take breaks and lie down, R. 93. Connie's ability to do such basic activities *on that basis* is not inconsistent with her allegations that her lower-extremity pain and swelling prevent her from doing paid work in an ordinary workplace setting for eight hours a day, five days per week. *See Tanzi F. v. Saul*, No. 3:19cv167, 2021 WL 3205050, at *6 (E.D. Va. July 8, 2021).

Finally, to carry her burden of proof at step five, the Commissioner must elicit reliable evidence "about the availability of jobs to a hypothetical person" like Connie, *Dozier v. Colvin*, No. 4:14cv93, 2015 WL 3791349, at *5 (E.D.N.C. June 17, 2015), in each age category that applies to her during the period for which the ALJ must determine if Connie is disabled, 20 C.F.R. § 404.1563(b) ("We will use each of the age categories that applies to you during the period for which we must determine if you are disabled."). The fact that Connie was forty-seven

years old, or a "younger person" under the regulations, on her alleged onset date, R. 39, does not

determine whether she could transition to other work in the national economy once she moved

into the "person closely approaching advanced age" category on her fiftieth birthday. *See Dozier*,

2015 WL 3791349, at *5–6 (reversing denial of benefits to claimant who turned 50 years old

during the relevant period where ALJ relied on VE testimony placing claimant in the "younger

person" category and did not ask VE about job prospects for a person "in the closely-

approaching-advanced-age category").

### III. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge

**GRANT** Connie's motion for summary judgment, ECF No. 13, **DENY** the Commissioner's

motion for summary judgment, ECF No. 17, **REVERSE** the Commissioner's final decision,

**REMAND** the matter under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** the case

from the Court's active docket.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and
Recommendation], any party may serve and file written objections to such
proposed findings and recommendations as provided by rules of court. A judge of
the court shall make a de novo determination of those portions of the report or
specified proposed findings or recommendations to which objection is made. A
judge of the court may accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. The judge may also receive further
evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within

14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is

directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: March 9, 2022

Joel C. Hoppe
United States Magistrate Judge